# seterus™

Physical Address
14523 SW Millikan Way, Suite 200; Beaverton, OR 97005

Business Hours (Pacific Time)
Monday-Thursday 5 a.m. to 8 p.m.
Friday 5 a.m. to 6 p.m.

Payments
PO Box 11790; Newark, NJ 07101-4790

Correspondence
PO Box 1077; Hartford, CT 06143-1077

Phone
866.570.5277

Fax
866.578.5277

Website
www.seterus.com

October 14, 2015

L712H
MOREJON, IDALMIS M
c/o ROBERT SANCHEZ 900 W 49 ST #500
HIALEAH, FL 33012

RE: Loa.. ... 4062

Thank you for returning the necessary documentation for your Modification Program. We are enclosing the Modification signed by Seterus, Inc.

Please remember you must make all of your Modification Plan payments on time and in accordance with the enclosed agreement.

Our addresses for receiving payments are as follows.

| Method | Information |
|---|---|
| Overnight Mail | Seterus, Inc. 14523 SW Millikan Way, Suite 200; Beaverton, OR 97005 |
| Regular Mail | Seterus, Inc. PO Box 11790; Newark, NJ 07101-4790 |

For an additional charge we offer separate services for you to send us payments as follows. If you elect to use one of these separate services you will be agreeing to pay an additional fee with your payment. **You are not required to use these separate services.** The charges are also subject to applicable state law, if any.

| Alternative Services | Information | Charge |
|---|---|---|
| Phone | 866.570.5277 | $10.00 |
| Western Union | Seterus, Inc., Code City: Seterus, Code State: OR | $12.95* |

* The charge established by Western Union's Quick Collect service is valid for most markets. Price and service availability may vary.

If you have any questions, please contact us at our toll-free number above. We have loan specialists available Monday-Thursday 5 a.m. to 9 p.m., Friday 5 a.m. to 6 p.m., and Saturday 9 a.m. to 12 p.m. (Pacific time). Saturday hours may vary.

Sincerely,

Seterus, Inc.

Enclosure

THIS COMMUNICATION IS FROM A DEBT COLLECTOR AS WE SOMETIMES ACT AS A DEBT COLLECTOR. WE ARE ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE. HOWEVER, IF YOU ARE IN BANKRUPTCY OR RECEIVED A BANKRUPTCY DISCHARGE OF THIS DEBT, THIS LETTER IS NOT AN ATTEMPT TO COLLECT THE DEBT, BUT NOTICE OF POSSIBLE ENFORCEMENT OF OUR LIEN AGAINST THE COLLATERAL PROPERTY. COLORADO: FOR INFORMATION ABOUT THE COLORADO FAIR DEBT COLLECTION PRACTICES ACT, SEE WWW.COLORADOATTORNEYGENERAL.GOV/CA. Seterus, Inc. maintains a local office at 355 Union Boulevard, Suite 250, Lakewood, CO 80228. The office's phone number is 888.738.5576. **NEW YORK CITY:** 1411669, 1411665, 1411662. **TENNESSEE:** This collection agency is licensed by the Collection Service Board of the Department of Commerce and Insurance. Seterus, Inc. is licensed to do business at 14523 SW Millikan Way, Beaverton, OR.

——————————————— [Space Above This Line For Recording Data] ———————————————

L790AC.1

Loan number:        4062
Investor loan number:     779522

# LOAN MODIFICATION AGREEMENT
(Providing for Fixed Interest Rate)

This Loan Modification Agreement ("Agreement"), made this 14th day of March, 2015, between MOREJON, IDALMIS M ("Borrower") and Seterus, Inc. ("Servicer") Loan Servicer for Federal National Mortgage Association ("Lender"), amends and supplements (1) the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), and Timely Payment Rewards Rider, if any, dated January 13, 2005 and recorded in Book or Liber 23014, at page(s) 136, Instrument Number 2005r0063833, of the MIAMI-DADE Records of FL and (2) the Note, bearing the same date as, and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the "Property," located at
    25 W 58TH TER, HIALEAH FL 33012-2760,

the real property described being set forth as follows:
    Property Legal Description - See Attached Exhibit A

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1. As of April 01, 2015, the amount payable under the Note and the Security Instrument (the "New Principal Balance") is U.S. $282,055.22 consisting of the unpaid amount(s) loaned to Borrower by Lender plus any interest and other amounts capitalized.

2. $60,795.22 of the New Principal Balance shall be deferred (the "Deferred Principal Balance") and Borrower will not pay interest or make monthly payments on this amount. The New Principal

MOREJON, IDALMIS ?.    4062
LOAN MODIFICATION AGREEMENT—Single Family—Fannie Mae UNIFORM INSTRUMENT    Form 3179  1.01 (rev. 06.12)    Page 1 of 10

Balance less the Deferred Principal Balance shall be referred to as the "Interest Bearing Principal Balance" and this amount is $221,260.00. Interest will be charged on the Interest Bearing Principal Balance at the yearly rate of 4.250%, from March 01, 2015. Borrower promises to make monthly payments of principal and interest of U.S. $959.43, beginning on the 1st day of April, 2015, and continuing thereafter on the same day of each succeeding month until the Interest Bearing Principal Balance and all accrued interest thereon have been paid in full. The yearly rate of 4.250% will remain in effect until the Interest Bearing Principal Balance and all accrued interest thereon have been paid in full. The new Maturity Date will be March 01, 2055.

3. Borrower agrees to pay in full the Deferred Principal Balance and any other amounts still owed under the Note and Security Instrument by the earliest of: (i) the date Borrower sells or transfers an interest in the Property, (ii) the date Borrower pays the entire Interest Bearing Principal Balance, or (iii) the new Maturity Date.

4. If Borrower makes a partial prepayment of Principal, the Servicer may apply that partial prepayment first to any Deferred Principal Balance before applying such partial prepayment to other amounts due.

5. In addition to the regularly scheduled payments that Borrower is required to pay under the Modification Agreement, Borrower agrees to pay Servicer an escrow payment in the amount of $553.32 for deposit into an escrow account for necessary payments to be made by Servicer, including but not limited to, payments for property taxes and insurance. As permitted by the Real Estate Settlement Procedures Act and other applicable law, Servicer may adjust the amount of the Escrow Payment. After notice of such adjustment, Borrower shall pay the adjusted Escrow Payment.
    (a) Each Escrow Payment shall be due on the same day(s) of the month as the regularly scheduled payments due under the Modification, commencing April 01, 2015.
    (b) In the event Escrow Payments are not made and Servicer advances its own funds to make payments that should have been paid from Borrower's escrow account, such amounts will be added to Borrower's loan obligation under the Note.
    (c) Any failure to make an Escrow Payment when due shall be deemed to be a default under the Note and Modification Agreement and upon Borrower's failure to pay the Escrow Payment, Servicer may exercise its rights under the Note and Modification Agreement.
    (d) Unless an agreement is made in writing or applicable law requires interest to be paid on the escrow account payments held by Servicer, Servicer shall not be required to pay any interest or earnings on the payments held.

6. If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument.

MOREJON, IDALMIS P       )62
LOAN MODIFICATION AGREEMENT—Single Family—Fannie Mae UNIFORM INSTRUMENT    Form 3179  1.01 (rev. 06.12)    Page 2 of 10

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

7. Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the date specified in paragraph No. 1 above:
   (a) all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note, including, where applicable, the Timely Payment Rewards rate reduction, as described in paragraph 1 of the Timely Payment Rewards Addendum to Note and paragraph A.1. of the Timely Payment Rewards Rider. By executing this Agreement, Borrower waives any Timely Payment Rewards rate reduction to which Borrower may have otherwise been entitled; and
   (b) all terms and provisions of any adjustable rate rider, or Timely Payment Rewards Rider, where applicable, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

8. Borrower understands and agrees that:
   (a) If Borrower has failed to make any payments as a precondition to this modification under a workout plan or trial period plan, this modification will be null and void.
   (b) All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.
   (c) All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

(d) Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.
(e) All administration and processing costs incurred by Servicer in connection with this Agreement, such as required notary fees, recordation fees, title costs and property valuation fees, shall be paid by the Servicer, unless otherwise stipulated.
(f) Borrower agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.
(g) To execute other documents as may be reasonably necessary to correct an error (including but not limited to any inaccuracy, mistake or omission) if an error is detected after execution of this Agreement. In the event an error is detected, a corrected Agreement will be provided to Borrower, and this Agreement will be void and of no legal effect upon notice of such error. If Borrower elects not to sign any such corrected Agreement, the terms of the original Note and Security Instrument shall continue in full force and effect and such terms will not be modified by this Agreement.

9. Notwithstanding anything to the contrary contained in this Agreement, Borrower and Lender acknowledge the effect of a discharge in bankruptcy that has been granted to Borrower prior to the execution of this Agreement and that Lender may not pursue Borrower for personal liability. However, Borrower acknowledges that Lender retains certain rights, including but not limited to the right to foreclose its lien evidenced by the Security Instrument under appropriate circumstances and as allowed by applicable law. The parties agree that the consideration for this Agreement is Lender's forbearance from presently exercising its rights and pursuing its remedies under the Security Instrument as a result of Borrower's default thereunder. Nothing in this Agreement shall be construed to be an attempt to collect against Borrower personally or an attempt to revive personal liability.

10. Borrower will pay to Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items." Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower

shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount and Borrower shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this paragraph.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a Lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender and Borrower can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

> Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund to Borrower any Funds held by Lender.

11. Any and all attorneys fees and legal costs incurred by Borrower or its representatives, with respect to this loan, will be the sole responsibility of the Borrower.

12. In the event of future default, Borrower authorizes Lender and Lender's successors and assigns, to share certain Borrower public and non-public personal information including, but not limited to (i) name, address, telephone number, (ii) Social Security Number, (iii) credit score, (iv) income, and (v) payment history and information about Borrower's account balances and activity, with an authorized third party, which may include, but is not limited to, a counseling agency, state or local Housing Finance Agency, or similar entity that is assisting Borrower in connection with obtaining a foreclosure prevention alternative, including the Trial Period Plan to modify Borrower's loan ("Authorized Third Party").

    Borrower understands and consents to Lender or Authorized Third Party, as well as Fannie Mae (the owner of Borrower's loan), disclosing such personal information and the terms of any relief or foreclosure prevention alternative, including the terms of the Trial Period Plan to modify Borrower's loan, to any insurer, guarantor, or servicer that insures, guarantees, or services Borrower's loan or any other mortgage loan secured by the Property on which Borrower is obligated, or to any companies that perform support services to them in connection with the loan or any other mortgage loan secured by the Property on which Borrower is obligated.

    Borrower consents to being contacted by Fannie Mae, Lender, or Authorized Third Party concerning mortgage assistance relating to Borrower's loan including the Trial Period Plan to modify Borrower's loan, at any telephone number, including mobile telephone number, or email address Borrower has provided to Lender or Authorized Third Party.

    By checking this box, Borrower also consents to being contacted by text messaging. ☐

In Witness Whereof, the Servicer and I have executed this Agreement.

_____Scott Burich_____     JUN 2 3 2015
Seterus, Inc.  Authorized Signer     Date

_____Idalmis Morejon_____     3/31/15
MOREJON, IDALMIS M     Date

Post Office Address
c/o ROBERT SANCHEZ, 900 W 49 ST #500, HIALEAH, FL 33012

_____Jennifer Ruiz_____
Witness 1 -
(signature & printed name required)

_____Yoandra Gonzalez_____
Witness 2 -
(signature & printed name required)

_____ [Space Below This Line For Acknowledgments] _____

STATE OF FLORIDA
COUNTY OF _____Dade._____

The foregoing instrument was acknowledged before me this ___31___ day of
____March_____, __2015____ by MOREJON, IDALMIS M, who is personally known to me or who has produced the following document (excluding any numbers) _____ as identification.

_____
(Signature of person taking acknowledgment)

(Seal)

_____Betty Ruiz_____
(Name typed, printed or stamped)

BETTY RUIZ
NOTARY PUBLIC
STATE OF FLORIDA
Comm# EE187592
Expires 4/8/2016

_____
(Title or rank)

_____
(Serial number, if any)

My Commission Expires: __4/08/2016__

BETTY RUIZ
NOTARY PUBLIC
STATE OF FLORIDA
Comm# EE187592
Expires 4/0/2016

MOREJON, IDALMIS I        4062
LOAN MODIFICATION AGREEMENT—Single Family—Fannie Mae UNIFORM INSTRUMENT    Form 3179  1.01 (rev. 06.12)    Page 8 of 10

State of Oregon

County of Washington

On _____, before me, _____, personally appeared _____, **Authorized Signer of Seterus, Inc.**, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____
Notary Public
State of Oregon

My commission expires on:

Commission No.

**Exhibit A**
THE WEST 54 FEET OF THE EAST 189 FEET OF THE NORTH 1/2 OF TRACT 27, LESS THE SOUTH 60 FEET OF SUBDIVISION OF THAT PART OF EAST 1/2 OF NW 1/4 OF SECTION 31, TOWNSHIP 52 SOUTH, RANGE 41 EAST, LYING WEST OF ROCK ROAD ACCORDING TO THE PLAT THEREOF, AS RECORDED IN PLAT BOOK 9, PAGE 32 1/2 OF THE PUBLIC RECORDS OF MIAMI-DADE COUNTY, FLORIDA.
Also Known As: 25 W 58TH TER, HIALEAH, FL 33012-2760

# seterus™

### Notice of Special Flood Hazard and Availability of Federal Disaster Relief Assistance

Seterus, Inc. is the servicer of your loan.

**Non-Participating Community**
We are sending you this notice to inform you that the building or mobile home securing your loan is located in an area prone to high flood risks called a Special Flood Hazard Area (SFHA). Based on this information, federal regulations require that flood insurance be placed on this property. The flood insurance must be maintained for the life of the loan.

The area has been identified by the Federal Emergency Management Agency (FEMA) as an SFHA using the Flood Insurance Rate Map (FIRM) or the Flood Hazard Boundary Map (FHBM). FIRMs are prepared by FEMA in cooperation with the applicable community to identify high and low-to-moderate flood risk areas. FEMA periodically reviews and revises maps to identify property flood exposure. According to FEMA, the SFHA in which your building or mobile home is located has at least a one percent chance of a flood equal to or exceeding the base flood elevation (a 100-year flood) in any given year. During the life of a 30-year mortgage loan, the risk of flooding in an SFHA is 26 percent.

Federal law allows a lender and borrower jointly to request the Administrator of FEMA to review the determination of whether the property securing the loan is located in an SFHA. If you would like to make such a request, please contact us for further information. You also may call a FEMA mapping specialist at 877.336.2627 to discuss your concerns.

**Non-Participating Community**
- If the community in which your property is located does not participate in the National Flood Insurance Program (NFIP), federal flood insurance is not available. However, private flood insurance may be available on a limited basis in the SFHAs of non-participating communities. Federal financial assistance including disaster assistance grants or loans and flood mitigation grants are not available in SFHAs of non-participating communities. For example, if the non-participating community has been identified for a least one year as containing an SFHA, properties located in the community will not be eligible for federal disaster relief assistance in the event of a federally declared flood disaster.
- Conventional loans, loans that are not federally backed can be made on buildings in SFHAs of non-participating communities, if authorized by the regulatory authority of the lending institution. However, government guaranteed or insured loans (e.g., SBA, VA, and FHA loans) are not permitted to be made in non-participating communities, if secured by structures in SFHAs.
- A non-participating community can join the NFIP – contact your local chief executive official for additional information.

**In order to complete your loan modification, you must return a signed copy of this notice with your modification documents. A second copy of this notice is included for your records.**

Your insurance agent can assist you to obtain the appropriate flood insurance coverage for your property.

THIS COMMUNICATION IS FROM A DEBT COLLECTOR AS WE SOMETIMES ACT AS A DEBT COLLECTOR. WE ARE ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE. HOWEVER, IF YOU ARE IN BANKRUPTCY OR RECEIVED A BANKRUPTCY DISCHARGE OF THIS DEBT, THIS LETTER IS NOT AN ATTEMPT TO COLLECT THE DEBT, BUT NOTICE OF POSSIBLE ENFORCEMENT OF OUR LIEN AGAINST THE COLLATERAL PROPERTY. COLORADO: FOR INFORMATION ABOUT THE COLORADO FAIR DEBT COLLECTION PRACTICES ACT, SEE WWW.COLORADOATTORNEYGENERAL.GOV/CA. Seterus, Inc. maintains a local office at 355 Union Boulevard, Suite 250, Lakewood, CO 80228. The office's phone number is 888.738.5576. NEW YORK CITY: 1411669, 1411665, 1411662. TENNESSEE: This collection agency is licensed by the Collection Service Board of the Department of Commerce and Insurance. Seterus, Inc. is licensed to do business at 14523 SW Millikan Way, Beaverton, OR.    1046AA.1    Page 1 of 2

- Flood insurance is available from private insurance companies that issue standard flood insurance policies on behalf of the national flood insurance program or directly from the national flood insurance program.
- Flood insurance that provides the same level of coverage as a standard flood insurance policy under the national flood insurance program may be available on behalf of the company.
- We encourage you to compare the flood insurance coverage, deductibles, exclusions, conditions, and premiums associated with the flood insurance policies issued on behalf of the national flood insurance program and policies issued on behalf of private insurance companies and to direct inquiries regarding availability, cost, and comparisons of flood insurance coverage to an insurance agent.

**BORROWER ACKNOWLEDGEMENT:**

BY SIGNING BELOW, Borrower(s) acknowledges receipt of this Notice.

Signature: _Edly Morin_  Date _3/31/15_
Print Name: _Edalmis Moregun_

Signature: _____  Date _____
Print Name: _____

Loan number      ;062

State of Oregon

County of Washington

On **6/23/2015**, before me, **Terrill Thomas Hanlin**, personally appeared **Scott Burich, Authorized Signer of Seterus, Inc.**, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____
Terrill Thomas Hanlin, Notary Public
State of Oregon

OFFICIAL STAMP
TERRILL THOMAS HANLIN
NOTARY PUBLIC - OREGON
COMMISSION NO. 925244
MY COMMISSION EXPIRES FEBRUARY 13, 2018

My commission expires on: February 13, 2018

Commission No. 925244